[No. 8243.]

CITY OF GOLDEN V. WESTERN LUMBER AND POLE COMPANY.

1. MUNICIPAL CORPORATION—*Duty to Pay Sub-Contractor Upon Public Work.* The sub-contractor upon a public work of the city, having obtained from the contractor an order upon the city for a certain amount, made service thereof on the city clerk. Held equivalent to the notice of claim required by Rev. Stat. sec. 5408. A subsequent payment of the amount to the contractor was disregarded, in an action by the sub-contractor against the city. (385.)

2. —— *Governmental or Private Capacity.* A city in constructing water works is acting in its private capacity. (387.)

3. —— *Liability for Interest.* A city which refuses or neglects payment of a just demand is liable for interest thereon (Rev. Stat. sec. 3162). *Montezuma County v. Wheeler,* 39 Colo. 207, explained and distinguished. (389.)

4. APPEAL AND ERROR—*Remand—Order Construed.* An order remanding a cause for further proceedings, etc., construed in connection with the opinion, as requiring the court below to enter a particular judgment and not to award a new trial. (385, 386.)

*Error to Jefferson District Court.* Hon. H. S. CLASS, Judge.

Mr. JOHN W. BARNES, Mr. WILLIAM A. DIER, for plaintiff in error.

Messrs. VAN CISE, GRANT & VAN CISE, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court.

This action was commenced May 27th, 1904, in the District Court of Jefferson County, by the Western Lumber and Pole Company, defendant in error, against Ronald P. McDonald and the City of Golden, the latter being plaintiff in error here, to recover the sum of $3,477.11, with interest at eight per cent. a year from November 5th, 1903, alleged to be due for fir pipe staves, sold and delivered to McDonald, as principal contractor, for use in the construction of a water works system for the city. The cause was tried to the court in April, 1908, upon the issues formed by the amended

complaint, the answer of the city, and replication thereto. Upon these issues, after a full hearing on the merits, the court found that the city was not liable for the claim, and as to it entered a judgment of dismissal. Subsequently such proceedings were had that this judgment was reversed by the Court of Appeals, and the cause remanded. See *Western Lumber and Pole Co. vs. City of Golden*, 23 Colo. App. 461, 130 Pac. 1027.

At a second hearing, on November 29th, 1913, upon motion, on the authority of the decision of the Court of Appeals, judgment was entered in favor of the company for the sum of $6,277.00, the aggregate of the original claim, $3,477.11, and interest, $2,799.89, to date of judgment. The case is now here for review on writ of error sued out by the city to that judgment.

There are but two questions for consideration. First. Should the case have been retried on its merits, upon the theory that it was remanded for that purpose? and, Second. Is the company entitled in any event to interest on its claim?

The amount of the original claim is evidenced by an order in writing duly served upon the clerk of the city on November 5th, 1903, which reads as follows:

"Golden, Colo., Nov. 5th, 1903.
To the city of Golden, W. H. Carter, Esq.,
City Clerk, Golden, Colo.

Dear Sir—You will please retain out of any estimate due me, on contract between the City of Golden and myself, the sum of thirty-four hundred seventy-seven dollars and eleven cents ($3,477.11), and pay the same to the Western Lumber & Pole Company of Denver, Colorado. Interest to be added at rate of 8 per cent per annum from date until paid.

(Signed)    R. P. McDonald."

The pleadings of the city admit that it failed to comply with and observe the provisions of the law, upon which the

company relied for recovery, and under which the city's liability was declared.

Section 5408, Revised Statutes 1908, provides:

"Any person to whom a contractor  *  *  *  may be indebted, may file with the clerk of such city  *  *  *  his claim.  *  *  *  If such claims tally with statement of contractor  *  *  *  the amount claimed shall be paid directly to claimant, and shall be deducted out of sum to be paid contractor  *  *  *  "

The facts essential to recovery under the law on the merits were conclusively shown by testimony at the original trial, and no testimony was introduced to overcome, disprove or challenge the same. But the trial court misapplied the law and determined, regardless of the proofs, that under the statute and as matter of law there was no liability against the city under the circumstances shown. On the contrary, however, the Court of Appeals in its opinion determined that the right of the company to recover from the city had been fully established, and remanded the case, in this language:

"Entertaining no doubt as to the validity of the statute and the right of the Lumber Company to invoke its provisions, the judgment of the trial court must be reversed and the case remanded for further proceedings in harmony with the views herein expressed."

Just what the Court of Appeals did determine as to plaintiff's right of recovery is shown in the following extracts from the opinion rendered. At page 463, (130 Pac. 1027), this was said:

"The contractor became indebted to the Lumber Company for the material which it had furnished him, and which he and another firm of contractors, who completed the water works after the termination of the McDonald contract, used in the construction of the plant. For this indebtedness, amounting to over $3,000, after all proper credits were

allowed, the contractor gave an order to the plaintiff in error on the city. In fact he gave two such orders, one signed by himself, and one signed by himself and his manager. These orders appear to have been delivered to the city clerk * * * There was other evidence, such as correspondence, clearly indicating knowledge on the part of the city officials that the contractor was not making satisfactory settlements with the Lumber Company for material which the latter was furnishing the former."

On pages 469, 470 (130 Pac. 1027), it is further said:

"It is conceded that the city made no attempt whatever to comply with the provisions of this statute or any thereof. * * * Section 5408 of the act, in unequivocal terms, commands the city to pay the money due the claimant directly to him, when by agreement or judgment that amount shall have been ascertained."

After saying that equity considers that as done which ought to have been done, the opinion proceeds as follows, at page 475 (130 P. 1031):

"This wholesome rule of equity requires us to hold that neither the city's duty nor the Lumber Company's right have been in any manner altered by the unauthorized payment by the city of McDonald's claim, and that the Lumber Company may yet look to the city for its pay for the material furnished the contractor, precisely as it might have done had no such payment been made by the city to him."

It is clearly evident that when the contractor, McDonald, gave the order to the company, that was an admission by him of the amount due the latter. In other words, the written order by the contractor, when served on the city on November 5th, 1903, was in every way equivalent to a compliance by the creditor with the requirements of section 5408. The city had notice of the claim and the amount thereof, and in the absence of fraud, and there is no suggestion of that, was bound thereby, as to the amount of the claim.

The opinion of the Court of Appeals plainly determines that the plaintiff was entitled to recover under the statute, upon the merits of the case. Nothing therefore was left to be done but to remand the cause to the trial court for entry of the judgment which it should have entered originally, and as we construe the remanding order, considered in connection with the context of its opinion, the Court of Appeals intended that the trial court should do precisely what it did do.

Having determined that the city is liable, shall it pay interest on the claim from the time of the presentation of the order and demand for payment, November 5th, 1903, or at all? The sections of the statute involved in this consideration are 3162, 3163 and 3164, Revised Statutes 1908, which read as follows:

3162. "Creditors shall be allowed to receive interest when there is no agreement as to the rate thereof, at the rate of eight per centum per annum, for all moneys after they become due, on any bond, bill, promissory note or other instrument of writing, or on any judgment recovered before any court or magistrate authorized to enter up the same within this state, from the day of entering up said judgment until the satisfaction thereof be made; also, on money due on mutual settlement of accounts from the date of such settlement, on money due on account from the date when the same became due, and on money received to the use of another and retained without the owner's knowledge."

3163. "The parties to any bond, bill, promissory note, or other instrument of writing, may stipulate therein for the payment of a greater or higher rate of interest than eight per centum per annum, and any such stipulation may be enforced in any court of competent jurisdiction in the state."

3164. "County orders and warrants, town and city and school orders and warrants, and other like evidences or certificates of municipal indebtedness, shall bear interest

at the rate of six per centum per annum from the date of the presentation thereof for payment at the treasury where the same may be payable, until there is money in the treasury for the payment thereof, except when otherwise specially provided by law, and every county treasurer, town treasurer and city treasurer to whom any such county, town, city or school order or warrant is presented for payment, and who shall not have on hand the funds to pay the same, shall endorse thereon the rate of interest said order or warrant will draw, and the date of such presentation, and subscribe such endorsement with his official signature; Provided, That, all such orders and warrants may be made to bear a lower rate of interest than above specified, by special agreement between such counties, towns and cities issuing the same, and the person to whom such orders or warrants are issued."

It has long been recognized that a distinctively municipal corporation acts in a two-fold manner, namely, in a governmental or political capacity, and in a ministerial or private or business capacity. In this case the city was acting in a purely ministerial or business capacity. This court has recognized this doctrine. In *Denver v. Maurer*, 47 Colo. 209, it is said at page 212 (106 Pac. 875, 876):

"The authorities agree that two classes of general duties are imposed upon a municipal corporation. One is governmental, and the municipality is not liable for negligence of employes occuring in the performance thereof. The other is private and corporate, and the municipality is liable for negligence of employes occurring in the performance thereof. *City of Denver v. Davis*, 37 Colo. 370," (86 Pac. 1027, 6 L. R. A. (N. S.) 1013, 119 Am. St. 293; 10 Ann. Cas. 187.) In *City of Denver v. Rhodes*, 9 Colo. 554, 13 Pac. 729, it was declared that a municipality undertaking a public improvement, such as the construction of a sewer, is liable like an

individual for damages resulting from negligence or omission of duty.

Explaining fully the distinction, based upon authorities quoted therein, in *Esberg Cigar Co. v. City of Portland,* 34 Oregon 282, 55 Pac. 961, 43 L. R. A. 435, 75 Am. St. 651, it was held, in substance, that water works belonging to a city in its private, rather than its public capacity, so as to make it liable for injury for the negligent construction or maintenance thereof, even though the legislature determines upon the necessity for such works and selects certain persons as agents of the city by whom the work shall be undertaken.

In *Shipley v. Hacheney,* 34 Oregon 303, this is said, at page 307, 55 Pac. 972:

"So it is said, in manifest harmony with this distinction, that the rule in respect to the corporate indebtedness of the municipality does not ordinarily differ from that which applies to individuals; Dillon, Mun. Corp. sec. 506. The doctrine is also sustained and promulgated by judicial utterances. In *Murphy v. City of Omaha,* 33 Neb. 402, 408, 50 N. W. 267, it is said: 'In the absence of any contract that payment shall be delayed, the city will be liable for interest like any other debtor. * * * In its business transactions a city should be required to conform to the ordinary rules and all exemptions claimed which would work injustice should be denied.' Upon the same principle, interest was allowed against the town in *Langdon v. Town of Castleton,* 30 Vt. 285. See, also, *Pruyn v. City of Milwaukee,* 18 Wis. 367; *City of Grand Rapids v. Blakely,* 40 Mich. 367, 29 Am. Rep. 539; *State ex rel. v. Trustees of Town of Pacific,* 61 Mo. 155; *City of Scranton v. Hyde Park Gas Co.,* 102 Pa. St. 382:"

Even in Illinois, where the decisions in this particular seem to be favorable to the city, they do not go so far as to hold that cities are not chargeable with interest. In *Conway*

*v. City of Chicago,* 237 Ill. 128, at page 137 (86 N. E. 623), the court said:

"The general rule as to the liability of municipalities is, that they are not liable on their contracts for interest in the absence of an express agreement to pay it, yet where money is wrongfully obtained, or where it is lawfully obtained, and unlawfully and wrongfully withheld, the municipality is liable for interest to the same extent as a private person."

*City of Shawnee v. Freauff,* 36 Okla. 280, 128 Pac. 255; 28 Cyc., page 1754.

We have no hesitancy, therefore, in holding, upon the weight of authority, that towns and cities in business transactions are liable for interest, in the absence of statute or decisions of our courts putting them on a different basis, the same as private corporations or individuals. In this connection it is contended by counsel for the city that this court, in the case of *Montezuma County v. Wheeler,* 39 Colo. 207, 89 Pac. 50, has laid down a rule based upon the construction of our statutes, which puts towns and cities in a different position respecting interest than obtains generally.

The opinion in question ought not to be given such construction. There it was attempted to collect interest from a county upon a bill of a water commissioner, which the county refused to pay. It was sought to recover interest on the amount from the date the bill was presented and payment demanded. The liability of the county for interest, under such circumstances, was denied, upon the theory that counties are involuntary organizations, civil divisions of the state, created by general law to aid in the administration of state government, and therefore not liable for interest, except by agreement, or unless specifically made so by statute.

A city is a voluntary organization created for local convenience, advantage and interests, and acts in a private

as well as a public capacity, and an entirely different rule applies to it with respect to liability to pay interest in business transactions. This distinction is clearly recognized and pointed out in the decision under consideration. Besides, that portion of the opinion which it is sought to apply in this case, was in no sense necessary for the decision of that case, the matter in question being purely argumentative, and expressly used, as stated in the opinion itself, to strengthen the conclusion, based on an entirely different line of argument, which had been reached. After the court had determined the case upon the theory that the county was an involuntary corporate body, a division of the state, created purely as an agency or instrumentality of the state for general governmental purposes, and subject to like rules and restrictions governing its liability for interest as the state, and therefore not bound by statute to pay interest unless expressly designated therein, the court made use of this language:

"The foregoing we believe to be the correct doctrine as to the allowance of interest upon claims against a county. We are strengthened in the belief that it was not the intention of the legislature to allow interest upon claims against counties by virtue of sec. 2252 Mills' Ann. Stats. (Sec. 3162, R. S. 1908), because sec. 2254 provides that: 'County orders and warrants and other like evidences or certificates of indebtedness shall bear interest at the rate of eight per cent.' If it was intended that obligations of the county other than those mentioned in sec. 2254 should draw interest as provided in sec. 2252, the enactment of the latter section would have been idle, because the earlier section provides for the allowance of interest 'on any bond, bill, promissory note or other instrument of writing,' which expressions are broad enough to include county orders and warrants, and other like evidences of municipal indebtedness. The rule being that counties may not have liabilities imposed upon them

in the absence of a statute, and the fact that the legislature provided that county orders, warrants and other like evidences of municipal indebtedness shall bear interest, it must have intended to exclude all obligations other than those mentioned. *Expressio unius est exclusio alterius.*"

In argument counsel for the city say, having reference to that part of the decision above quoted, "The reasoning of that opinion would seem to apply as well to cities and towns." Undoubtedly this would be true if the reasoning thus put forth had been essential to the conclusion there reached, or if that particular portion of the opinion could fairly be said to be other than argument or *dicta.*

The evident intent of section 3164 was, first, to place a uniform rate of interest upon a specific class of obligations; and second, to make it impossible for county, town, city or school district officials to agree, as otherwise under section 3163, *supra,* they might do, to pay a higher rate of interest upon such securities than that fixed by statute. We are unwilling to accept the suggestion that it was the intention of the legislature by the enactment of section 3164 to preclude the recovery of interest, except by express agreement, on all other county, city, town or school district indebtedness. Section 3164 in no manner limits, qualifies or changes the effect and purpose of section 3162, except as to a particular class of securities. By section 3162 creditors are entitled to interest on claims therein mentioned at the rate of eight per cent. per annum from all debtors. The conclusion reached in *Montezuma County v. Wheeler, supra,* therefore, has no bearing upon the question of the liability of towns and cities for interest. Any other holding would have the effect to exempt cities and towns from the payment of interest on judgments against them. Section 3162 plainly applies to cities and towns, and gives a creditor the right to recover interest, upon claims growing out of business transactions with them, whenever, under like circumstances,

he might lawfully do so from a private corporation or individual.

There appearing to be no error in the judgment, it is affirmed.

Decision *en banc.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GARRIGUES dissent.

GARRIGUES, J., dissenting.

1. It appears from the complaint that the defendant in error, a lumber company, in 1903 furnished the contractor, McDonald, with a quantity of fir pipe staves used by him in constructing a pipe line for a system of waterworks built by the city, for which, without interest, it is alleged an unpaid balance remains of $3451.92, not $3477.11, as stated in the majority opinion. The city paid the contractor, who, it is alleged, neglected to pay the lumber company such balance, and in 1904 it brought suit against the city based upon chapter 124, session laws of '99. At the first trial in 1908, the lower court dismissed the action as to the city, upon the ground that in no event could it be liable under this statute for such material furnished to the contractor. Thereafter such proceedings were had on review that this judgment was reversed by our Court of Appeals, which held this interpretation placed upon the statute by the lower court was erroneous, and that the lumber company might yet, notwithstanding the city had paid the contractor in full, look to it for its pay for such materials, in an action based upon the city's failure to comply with the statute. The case was reversed by the Court of Appeals and remanded for further proceedings in the lower court, in harmony with the views expressed in its opinion, but without specific directions as to the judgment, or any judgment that should be entered. In November, 1913, after remittitur from the Court of Appeals, the lower court, upon motion of the lum-

ber company, and against the protest, and over the objection of the city, summarily entered judgment against it in the sum of $6277.00, without a trial or the presentation of any evidence whatever, based solely upon the remittitur, judgment and opinion of the Court of Appeals. Upon the question of interest the complaint alleges that after deducting all payments, there remained a balance November 5, 1903, of $3451.92; that the interest on this up to November 5, 1903, was $25.19, which was added to the balance, and on this date McDonald gave the lumber company an order on the city for $3477.11 bearing interest at eight per cent from November 5, 1903, until paid, and it is upon this order that the lower court entered judgment for $6277.00 being the face of the order plus $2799.89 interest thereon computed at eight per cent from November 5, 1903, and it is the judgment of the lower court pronounced upon this order which the majority opinion affirms. The allegations of the complaint regarding the purchase of the staves by McDonald from the lumber company, their use by the contractor in the construction of the pipe line, and that there was a balance due from McDonald to the lumber company, were all denied and put in issue by the answer.

2. The Court of Appeals gave no direction to the lower court to enter any specific judgment. It simply ordered that it proceed in harmony with the views expressed in the opinion of the court. The question which it had under consideration and decided was the liability of the city, as an abstract proposition under the statute, not the amount of the liability. The lower court held it could not be made liable under the statute in any event. The Court of Appeals held this was erroneous; that a municipality letting a contract for public works may be made liable, under the statute, to one supplying material to the contractor; that merely because the statute contained no provision for its enforcement was no defense, where the city had paid the contractor

in full in violation thereof, and made no attempt to comply with its terms.

It is evident to me and I think very clear from reading the opinion of the Court of Appeals that it only intended to place a construction upon the statute for the guidance of the lower court in another trial *de novo*, and reversed and remanded the case generally. If it had intended the lower court should, upon receipt of the remittitur, enter a final judgment for a definite amount based simply upon the opinion, judgment and remittitur of the Court of Appeals, it seems inexcusable that it did not give such specific directions to the lower court. It gave no such directions. I think the majority opinion arbitrarily reads such intent into the opinion of the Court of Appeals. The city has a right, on a trial *de novo*, to contest the matters at issue in the pleadings, governed by the law of the case announced by the decision of the Court of Appeals. The contractor could not forestall this right, and obligate the city to pay a liquidated amount with interest thereon by giving an order on the city. I think it erroneous to measure the city's liability by an order given by McDonald to the lumber company, against the city, drawing eight per cent interest, in the face of a denial by the city of the allegations of the complaint. According to the decision of the Court of Appeals the lumber company's right of action against the city, if any, is based purely upon a statutory liability, and not upon an order given by the contractor. When the case was reversed and remanded without further directions except to proceed in harmony with the opinion, I think it stood for trial *de novo* upon the issues presented by the pleadings, as originally. Where it is intended the trial court should enter a final judgment disposing of the case upon the record as it stands, the practice in all well regulated courts of review is for the appellate court to direct specifically the kind of judgment to be entered.

*Johnson v. Bailey,* 17 Colo. 59, 28 Pac. 81; *Dickson v.*

*Bank,* 11 Colo. App. 154, 52 Pac. 745; *Talcott v. Delta Company,* 19 Colo. App. 11, 73 Pac. 256; *Cahn v. Tootle,* 58 Kas. 260, 48 Pac. 919.

3. According to the law of the case as announced by the Court of Appeals, the suit is based upon a specific statute, and the measure of the city's liability is the unpaid balance, if any. which the contractor owes the lumber company for material, not the order given by McDonald. The complaint alleges that the balance is $3451.92, which, plus $25.19 interest that was added, amounted on November 5, 1903, to $3477.11, for which amount McDonald on that date gave an order drawing eight per cent interest. The lower court allowed the face of this order, and interest from date at eight per cent., making an aggregate judgment of $6277.00, and the question is presented: In the event there is a balance due the lumber company from McDonald, for which the city is liable, must it pay interest thereon under the statute; not must it pay interest on the McDonald order. Every lawyer knows that in the absence of an express agreement, interest is purely a creature of statute and one claiming interest must place his finger on some specific law authorizing it. There is no provision for interest in the statute creating the liability of the city in this case, and its liability to pay interest, in the absence of an express agreement, on any balance due from the contractor to the material man is based upon chapter 71, R. S., 1908. Section 3162 thereof upon the allowance of interest generally to creditors, provides that creditors, where there is no agreement as to the rate, in certain specific instances shall be allowed eight per cent per annum. Section 3164 provides that county orders and warrants, town and city orders and warrants and school orders and warrants shall bear interest at six per cent. per annum from the date of presentation until there is money in the treasury to pay them. In the *Montezuma* case (39 Colo. 207), we held that section 3162 regarding the gen-

eral liability of creditors to pay interest, did not apply at all to counties; that the liability of counties to pay interest is governed exclusively by section 3164. The provisions of this section 3164 concerning towns and cities, counties and school districts, are identical. It makes no distinction. It says that city orders and warrants, like county orders and warrants, shall draw six per cent. interest, from date of presentation, until there is money in the treasury for their payment; therefore the reason given in the *Montezuma* case for holding that it was not intended by the statute that obligations of the county other than those mentioned in section 3164 should draw interest under section 3162, applies with equal force to towns and cities and school districts. The statutory liability of the city for the balance due the material man from the contractor is an obligation of the city, other than that mentioned in section 3164, and if section 3162 regarding interest generally, is not applicable to counties, then from the reasoning in the *Montezuma* case, it does not apply to cities. The McDonald order calling for eight per cent interest, was not a contract or agreement made by the city. The city had nothing to do with it, It in no way bound the city to pay either the principal or interest mentioned therein. Its liability is not upon the order; but for the unpaid balance, if any, for material, and whether it was liable or not for interest on such balance depends upon the provisions of section 3164, under the authority of the *Montezuma* case, and not upon section 3162. It surely cannot be successfully contended that section 3164 does not place counties, cities, towns and school districts upon exactly the same basis, and apply to them alike with regard to the payment of interest, and if counties are not liable for interest under section 3162, then towns, cities and school districts are not. I understand the majority opinion to hold that in their governmental capacity cities are controlled by section 3164, in regard to payment of interest, but

in their ministerial capacity they are governed in this regard by section 3162. The statute makes no such distinction, and the *Montezuma* case expressly holds that obligations of the county, other than those mentioned in section 3164 do not draw interest under section 3162. I cannot consistently say that counties are governed wholly by section 3164 in the payment of interest, but that cities in their ministerial capacity are governed by section 3162 when the statute places each upon exactly the same footing with regard to the payment of interest, without making such distinction or any distinction whatever. I think if we were right when we said that the obligations of counties other than those mentioned in section 3164 do not draw interest under section 3162, that we are wrong now when we draw a distinction in the section as to cities and say they are controlled by section 3164 in their governmental capacity, but by section 3162 in their ministerial capacity, as to the payment of interest, without overruling the doctrine announced in the *Montezuma* case.