No. 16,974.

PETERSON *v.* McNICHOLS, AUDITOR ET AL.

(260 P. [2d] 938)

Decided August 24, 1953.

Mr. JOHN F. MUELLER, Mr. GREGORY A. MUELLER, Mr. ALBERT A. NORBONT, for plaintiff in error.

Mr. LEONARD M. CAMPBELL, Mr. LESLIE A. GROSS, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THIS is an action for recovery of license fees exacted under an invalid ordinance.

Plaintiff in error is the assignee of claimants for refund of license fees totaling $15,898.00. Defendants in error are the City and County of Denver, a municipal corporation, its auditor, and manager of revenue and ex-officio treasurer. This action was instituted under Rule 106 of our rules of civil procedure to compel the defendants to approve and pay these assigned claims. On trial to the court, the complaint was dismissed on grounds presently to be discussed. This judgment of dismissal is before us for review.

Ordinance No. 74, series of 1945, of the Denver City Council, approved December 28, 1945, provided for the payment of annual license fees by persons, firms and corporations engaged in the retail sale of coal and solid fuel. On February 8, 1946, an action was commenced in the district court of the City and County of Denver on behalf of plaintiffs therein and all other coal dealers similarly situated, to test the validity of said ordinance. The trial court upheld the ordinance and its judgment was reversed by this court August 11, 1947 in the case of *Houston et al. v. Kirschwing,* 117 Colo. 92, 184 P. (2d) 487, in a holding that the provisions of the ordinance in question were unconstitutional, invalid, discriminatory and void.

While this case was pending in the district court a number of coal dealers, not having paid the license fee required under the ordinance for the year 1946, were summoned to appear in police court on August 23, 1946 for such failure. The police magistrate, upon being informed that a case to determine the validity of the ordinance was then pending in the district court, promptly

dismissed the police court complaints without prejudice. On September 19, 1946, the district court entered its judgment sustaining the validity of the ordinance. Immediately thereafter one of the defendants in the police court action, namely Virginia Davis and Leonard Boskovich, copartners doing business as the Leonard-Davis Coal Company, paid the fees required under the ordinance by a check marked "paid under protest," and a license was issued to them expiring December 31, 1946. On January 10, when license fees for the year 1947 became due, they again paid the required fee without noting any protest thereto. After this court, on August 11, 1947, reversed the judgment of the district court and determined the ordinance to be invalid, Davis et al. filed suit in the district court on January 27, 1948 for a refund of the fees paid pursuant to the ordinance. On trial to the court, plaintiffs' claim for the return of the fees for the year 1946 made under marked "protest" was granted, but the claim for the fees paid for the year 1947 was denied on the ground that the fees for that year were voluntarily paid. On a review of this judgment by this court in the case of *Davis v. Denver,* 120 Colo. 186, 207 P. (2d) 1185, the judgment of the trial court was affirmed on June 13, 1949. The above recital of facts of cases not presently before us becomes important only as to the background of the pending case.

With this background the city council of the City and County of Denver on November 14, 1949, passed an ordinance known as No. 237, series of 1949, which became effective November 26, 1949 as provided by Charter, bearing the following title:

"A Bill

"For an Ordinance for Refund of License Fees and Repayment of Cost of Bond Premiums Paid by Dealers Engaged in the Business of Selling, or Offering for Sale, Weighing and Delivering Solid Fuel at Retail, under the Provisions of Ordinance No. 74, Councilman's Bill No. 71, Series of 1945, and Appropriating Moneys in the General

Revenue Fund for Payment Thereof and Authorizing Payment of Warrants Drawn Thereon."

In the body of the ordinance there is a recital of the former ordinance and the holding by this court of its invalidity, and a statement that legal actions have been and will hereafter be instituted against the City to recover moneys paid for licenses during the years 1946 and 1947; declaring that it is inequitable that the claim of such dealers be denied; that a refund shall be made to each person, firm or corporation or the assignee thereof who paid such fees under the requirements of the ordinance for the years involved; that such refunds be made by the manager of revenue if applicants make application for such refunds within ninety days of the final approval of the ordinance; and further appropriating $26,500 out of the general fund of the City and County of Denver, or so much as may be necessary, for the purpose of payment of the refund of said license fees. Plaintiff in error, within the time provided, made application for refund which was refused," and this suit was then instituted to recover under the ordinance. The City filed its answer containing six defenses, and relying largely on the defense that the refund ordinance did not impose any legal duty upon the defendants; that they have no legal authority to approve the claim of plaintiffs or pay the same; further that the assignors of the plaintiff were not parties by name or representation in the suit wherein the licensing ordinance was held unconstitutional, and are therefore not entitled to any refund; and finally that the fees paid by plaintiff's assignors were voluntarily made and not made under duress, and that under the Charter of the City and County of Denver, sections 102, 140, 202, and 203 and Article II, section 11 of the Colorado Constitution, defendants have no authority to approve or pay these claims. The case was tried to the court in May of 1952, and plaintiff's complaint was dismissed on the grounds, as stated in the court's conclusions of law, that the refund ordinance was unconsti-

tutional for the following reasons: 1. That it usurps a judicial function and is contrary to Article III of the Constitution of the State of Colorado. 2. The ordinance is retrospective in its operation and makes an irrevocable grant of special privileges contrary to the Constitution. 3. The ordinance violates Article XI, section 1 of the Colorado Constitution. 4. The ordinance violates section 203 of the Charter of the City and County of Denver.

Plaintiff in error specifies error as to each of the various rulings of the trial court.

██ The pleadings do not reveal any attack on the constitutionality of the ordinance by the City; however, such must have been contended at the trial, or else the trial court gratuitously conjured up its own theory to overturn the solemn declaration of the City's legislative body, and we now find the City contending in support of the trial court's findings and assuming the odd position of attacking its own ordinance when it is advantageous to do so in an attempt to retain moneys it never had the right to exact. We cannot see, in this ordinance, any encroachment upon the Constitution or the charter. It is the voice of the people of Denver speaking through their legislative body, the city council, in expressing the inequity of retaining such unlawful fees, and the council did not require that to be recoverable the fees had to be paid under protest or duress, but in equity and good conscience, it provided a summary remedy for the benefit of those whose money had been unlawfully taken. It cannot be denied that the city council is the policy fixing body of the City and there is nothing whatever in the ordinance that indicates the council was attempting to "interpret judicial decisions," but it is unmistakably clear that it felt, and so expressed, the inequitableness of retaining moneys exacted under an ordinance this court had declared to be unconstitutional and void, by saying: "* * * legal actions have been and will hereafter be instituted against the City and County of Denver by coal dealers licensed under said Ordinance to recover

moneys paid for retail coal dealers licenses and bond premiums during the years 1946 and 1947 thereunder and it is inequitable that the claim of such dealers be denied by the City and County of Denver and that further moneys be expended in defense of claims for repayment of such license fees and bond premiums." Here we again are overtaken by the thought that the City and County of Denver caused the passage of this refunding ordinance in honest recognition of its delicate and inequitable position in withholding the moneys involved, and now the same city vigorously maintains that its ordinance, passed by it, is unconstitutional. This untenable position is difficult to understand.

In the case of *Davis v. Denver, supra,* which is relied upon to defeat the payment of these claims because they were not paid under protest or duress, it is said: "While there may be decisions to the contrary, we believe the better rule to be that when a payment is made under protest and is the only means of obtaining a license to do business, or to continue therein, and when to attempt to do business without first complying with the provisions of the ordinance would subject one to drastic penalties, clearly such a payment is involuntary. When, under the conditions such as are here present, an ordinance under which such license fee is exacted is found to be unconstitutional, the licensee may maintain an action against the muncipality for the recovery of the amount thereof."

The finding of the trial court that the ordinance usurps a judicial function and is contrary to Article III of the Constitution of the State of Colorado is inept in application to this litigation. The constitutional provision to which reference is made relates to state government and is not to be applied here in matters of purely local concern such as the matters pertaining to license of a business within the city and county.

We now believe, and it is our opinion, that there is a marked distinction between the question of recovering a voluntary payment of taxes and the recov-

ery of license fees. Failure to pay a tax does not invite prosecution such as attends upon failure to obtain a license without paying such fees as are required. There is no statute or ordinance requiring the city to retain license fees paid under an invalid ordinance. On the question raised by the city that the ordinance is invalid because it violates the city charter which relates to the incurring of indebtedness and because it requires the city officials to perform illegal acts and to pay out money contrary to law in violation of the charter, we readily say this contention cannot here be applied. It is not a matter of creating indebtedness, but rather a matter of refunding moneys unlawfully had and received and the city authorities are cloaked with the full protection of the ordinance, which, in our opinion, is a constitutional exercise of the power to remit taxes. The fact that a fee was paid voluntarily is no bar to the council in providing for a refund if the fee paid voluntarily or involuntarily was illegal, and the moral obligation to pay is just as strong in either event. And finally, the question of whether a refund could be directed in the case of voluntary payment of an illegal fee is one that is definitely to be addressed to the legislative body and not to the courts. We find nothing retrospective in connection with the action of the council in passing this refund ordinance, and it has no semblance of an attempt to pledge credit of the City as the trial court seemed to determine as being in violation of the state Constitution relative thereto. In conclusion we emphasize that in private business, between individuals, if money is paid under a mistake of fact or law, the right to the return of such money is nowhere denied. A municipality is not exempt from the same rule, and why it should seek the application of a different rule is not understandable.

As a further projection of the views herein expressed, we reverse the judgment of the lower court and remand the cause with direction to enter judgment for the

amount stated in the complaint, together with interests and costs.